UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE: ) | Case No: BK15-40070 |
| ) | |
| KIP AND ANDREA RICHARDS FAMILY ) | CHAPTER 11 |
| FARM & RANCH, LLC, ) | |
| ) | |
| Debtor. ) | |

### ORDER DENYING RABO AGRIFINANCE, LLC DERIVATIVE STANDING

On April 9, 2019, Movants Kip and Andrea Richards filed a Motion to Reconsider or Amend Order Granting Rabo AgriFinance, LLC (Rabo) Derivative Standing to Prosecute Claims Against the Debtor. Doc. 576. Rabo opposed the motion. Doc. 582. The Court held a hearing on the motion on June 5, 2019, after which it granted the parties time to brief the issues discussed at the hearing. Rabo filed a brief addressing the derivative standing issues raised by the Court. Doc. 597.

### I.    BACKGROUND

Debtor petitioned for bankruptcy relief on January 21, 2015. After numerous hearings and significant delay, the Court confirmed Debtor's Third Amended Plan of Reorganization with Addendum on February 27, 2017 (Confirmed Plan). Doc. 315. Among other provisions, the Confirmed Plan provided that Debtor would pay general unsecured claims in full within 30 days of the effective date of the Confirmed Plan.[1] The Confirmed Plan also provided for prompt payment of priority and administrative claims. Rabo offered no evidence showing that any unsecured claim remained unpaid more than 30 days after confirmation or more than 30 days after they were allowed. Doc. 294

---

[1] On the date of petition, Debtor owed $6,253.80 in unsecured nonpriority debt. Doc. 19 at 30. Debtor represented that real estate taxes owed to the only unsecured priority claims listed in Schedule E were current on the date of petition. Doc. 19 at 29.

at 13.[2]

Debtor refused to comply with the terms of the Confirmed Plan applicable to Rabo, however, leading to extensive litigation. Rather than pursuing dismissal, Rabo filed pleadings seeking to enforce the terms of the Confirmed Plan. Following a hearing on Rabo's Motion to Compel Debtor to Comply with the Confirmed Plan, the Court entered an order granting part of the relief Rabo sought but denying its request to compel Debtor to sell titled vehicles. Doc. 432. In its oral ruling, the Court explained that the Confirmed Plan and related stipulations did not include titled vehicles among the assets Debtor agreed to liquidate to pay Rabo. See Doc. 430.

Rabo filed a motion seeking derivative standing to prosecute claims on behalf of the bankruptcy estate on January 2, 2019. Doc. 530. Specifically, it sought authority to prosecute claims on behalf of the bankruptcy estate related to the allegedly fraudulent transfer of titled vehicles and unauthorized use of cash collateral.[3] Id.

Rabo served notice of its motion on Debtor, Kip and Andrea Richards and Larry Richards. Doc. 532. An unidentified representative of Debtor filed a response advising that Debtor did not have an attorney. Doc. 533. The Court held a telephonic hearing on February 27, 2019. Doc. 555. Rabo appeared through counsel. Id. Kip Richards appeared at the hearing. Id. To allow Debtor and other interested parties time to seek

---

[2] The Confirmed Plan limits the scope of claims. Paragraph 10.2(a) bars a holder of a claim or interest from seeking or receiving payment from Debtor or its property or guarantors of Debtor except as expressly provided in the Confirmed Plan.

[3] In the Complaint it filed on the same day as its motion seeking derivative standing, Rabo alleges Larry Richards and Kip Richards transferred title to approximately 16 vehicles from Debtor to Kip Richards on or about January 5, 2017, several weeks before confirmation of the plan. Doc. 531 at 1–12, 15–16. Rabo also alleges Debtor's representatives made post-confirmation unauthorized cash transfers from the debtor-in-possession account. Doc. 531 at 12–14.

2

counsel and prepare for the hearing, the Court continued the hearing to March 26, 2019. Docs. 556, 558. Kip Richards appeared without counsel at the March 26, 2019, hearing. Docs. 565, 567. Debtor did not appear. Id. Rabo appeared through counsel. Id. The Court granted the motion for derivative standing without receiving evidence or substantive argument from Kip Richards or Debtor because neither party offered evidence or argument. Doc. 567. Less than one month later, Kip and Andrea Richards filed their Motion to Reconsider or Amend Order Granting Rabo AgriFinance Derivative Standing to Prosecute Claims Against the Debtor.

## II. ANALYSIS

### A. The Motion to Reconsider the Order Granting Rabo Derivative Standing is Granted.

In its objection to Kip and Andrea Richards' motion, Rabo argues that the Richards received proper notice of its motion seeking derivative standing and failed to object. Doc. 582 at 1–2. It also argues that the Richards are not interested parties and lack standing to bring the Motion to Reconsider or Amend. Doc. 582 at 2–3. Rabo is correct; Kip and Andrea Richards (who had not retained counsel at the time) had notice of its motion seeking derivative standing and failed to offer evidence or argument in opposition to the motion. Regarding Rabo's claim that the Richards are not the proper parties to oppose its request for derivative standing, the evidence offered by the parties in support or opposition of the Motion to Reconsider or Amend is not sufficient to conclude whether Kip and Andrea Richards are "interested parties" in this bankruptcy case or whether they are the proper parties to bring the Motion to Reconsider or Amend. Despite Rabo's arguments, the Court will reconsider its order granting derivative standing to Rabo because "standing is an essential and unchanging part of

3

the case-or-controversy requirement of Article III." Meuir v. Greene Cty. Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). In other words, standing is a jurisdictional prerequisite courts are obliged to examine—sua sponte if necessary. Id.; Bernbeck v. Gaile, 829 F.3d 643, 646 (8th Cir. 2016). Any party or the Court may raise the issue of subject matter jurisdiction at any time. Gray v. City of Valley Park, 567 F.3d 976, 982 (8th Cir. 2009); see also In re Foster, 516 B.R. 537, 544 (B.A.P. 8th Cir. 2014), aff'd, 602 F. App'x 356 (8th Cir. 2015) ("Standing is a component of subject matter jurisdiction that may be challenged at any time during the proceeding." (citing Warth v. Seldin, 422 U.S. 490, 498–99 (1975))).

Given that the derivative standing issues raised by Kip and Andrea Richards relate to the Court's jurisdiction over Rabo's section 544, 549 and 550 claims, and given that it would be a waste of the parties' resources to proceed with litigation when the Court erroneously granted derivative standing, the Court finds it appropriate to reconsider its decision—even though the issue was raised by parties who either waived it or who are not the proper parties to assert it. Gray, 567 F.3d at 983 ("'Federal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case. Courts employ a number of doctrines to determine justiciability such as standing, ripeness, and mootness.'" (citation omitted)).

### B. The Motion to Amend Order Granting Rabo Derivative Standing is Granted.

In general, after a plan of reorganization is confirmed, a reorganized Chapter 11 debtor may attend to its business without supervision or court approval. See In re Worldcom, Inc., 351 B.R. 130, 133 (Bankr. S.D.N.Y. 2006) (citations omitted).

4

Exceptions to this general rule include circumstances where an interested party seeks interpretation or enforcement of a plan and the plan provides for retention of jurisdiction. Id.  The Confirmed Plan in this case provides that the Bankruptcy Court retains jurisdiction to "hear and determine all pending or future controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan."  Doc. 294, ¶ 10.1(d).  Accordingly, the Court may entertain this motion, but the relief that the Court is authorized to provide is also limited by the Confirmed Plan.

"During a chapter 11 case, the debtor acts as a debtor-in-possession and has essentially the same powers as a bankruptcy trustee, including the right to pursue prepetition claims (and postpetition but preconfirmation claims) on behalf of the bankruptcy estate."  In re Diabetes Am., Inc., 485 B.R. 340, 343 (Bankr. S.D. Tex. 2012) (citing 11 U.S.C. § 1107(a)); see also Harstad v. First Am. Bank, 39 F.3d 898, 901–02 (8th Cir. 1994); In re Ice Cream Liquidation, Inc., 319 B.R. 324, 333 (Bankr. D. Conn. 2005).  After confirmation, debtors lose their status as "debtor in possession" and, consequently, lose their right to bring claims belonging to the debtor or the bankruptcy estate—unless the debtors retain these claims by including appropriate provisions in their plan of reorganization pursuant to 11 U.S.C. § 1123.  See Harstad, 39 F.3d at 902; In re Diabetes America, Inc., 485 B.R. at 343; In re Ice Cream Liquidation, Inc., 219 B.R. at 333.

Section 1123 of the Bankruptcy Code provides, in pertinent part, that a plan may provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest[.]"

5

11 U.S.C. § 1123(b)(3)(B). "If a debtor has not made an effective reservation [in the plan of reorganization], the debtor has no standing to pursue a claim that the estate owned before it was dissolved." In re United Operating, LLC, 540 F.3d 351, 355 (5th Cir. 2008); see also In re Diabetes Am., Inc., 485 B.R. at 343; In re Ice Cream Liquidation, Inc., 319 B.R. at 333.

Debtor did not include language in its Confirmed Plan specifically reserving its right to bring claims on behalf of the estate under sections 544, 549 or 550 of the Bankruptcy Code or Nebraska law. The only provision in the Confirmed Plan indirectly referencing these claims is paragraph 10.1(b) under the section titled "Article X, Effects of Confirmation, Retention of Jurisdiction." This section provides:

> The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of and related to this Chapter 11 case and the Plan for the following purposes:
>
> * * *
>
> (b)     To hear and determine any actions pursuant to §§552, 541, 543, 547, 548, 549, 550 or 553 of the Bankruptcy Code, it being expressly stated herein that if [sic] it is the Debtor's intention to fully pursue any such causes of action after the Confirmation Date.

Doc. 294 at 12, ¶ 10.1(b).

Plan language providing that a bankruptcy court retains jurisdiction to hear and determine causes of action to recover assets pursuant to provisions of the Bankruptcy Code is not sufficient to reserve Chapter 5 claims for enforcement by a debtor. See Harstad, 39 F.3d at 902. Faced with Chapter 11 debtors' claim that the debtors properly reserved their right to avoid and recover preferential transfers in a plan provision describing jurisdiction retention, the Eighth Circuit Court of Appeals opined:

> Noting the retention of the court's statutory jurisdiction to hear post-confirmation matters is a far cry from reserving to the debtors a right to bring post-confirmation claims to recover preferences paid by the debtors but

6

> never disclosed by them during the pre-confirmation proceedings. We hold that the above-quoted language is not a retention of the claim at issue here—much less the "specific and unequivocal" retention that some courts require. See, e.g., Retail Mktg. Co. v. Northwest Nat'l Bank (In re Mako), 120 B.R. 203, 209 (Bankr.E.D.Okla.1990), quoted in Retail Mktg. Co. v. King (In re Mako, Inc.) 985 F.2d 1052, 1055 n. 3 (10th Cir.), appeal decided, 5 F.3d 547 (10th Cir.1993) (table). We agree with the Bank that, if the Harstads wished to retain the power to enforce this claim pursuant to § 1123(b)(3), it would have been a simple matter to do so with straightforward language (although not so easy to do without alerting their creditors and the Bankruptcy Court to the possibility of viable preference claims).

Id.

Like the plan provision at issue in Harstad, paragraph 10.1(b) of the Confirmed Plan describes Bankruptcy Court jurisdiction. Although this paragraph is more specific than the provision addressed by the Harstad court, it does not specifically reserve to the Debtor or its representative the right to pursue a claim or interest on behalf of the estate. Even if the Court were to read the provision broadly and interpret it to reserve for Debtor the right to pursue claims under sections 552, 541, 543, 547, 548, 549, 550 or 553 of the Bankruptcy Code, the Confirmed Plan (including paragraph 10.1(b)), does not transfer the right to pursue these claims to its representative, a trustee or a creditor, like Rabo.

Rabo concedes that the Confirmed Plan does not expressly appoint Rabo to enforce fraudulent transfer claims, but it argues that "nothing indicates that derivative standing is limited to only prior to confirmation" and suggests that the Court has authority to allow it to bring its claims on behalf of the bankruptcy estate. Doc. 597 at 2–3. Rabo cites no authority granting a creditor "derivative standing" post-confirmation to pursue claims on behalf of the bankruptcy estate under Chapter 5 of the Bankruptcy Code in a Chapter 11 case—absent a specific plan provision retaining the right to bring such causes of action and transferring them to a representative of the bankruptcy

estate.[4]

There are courts that address the right of third parties to bring causes of action owned by the bankruptcy estate after confirmation in a Chapter 11 case, but typically they analyze standing to bring these claims within the framework of section 1123(b)(3)(B). See, e.g., Search Market Direct, Inc. v. Jubber (In re Paige), 685 F.3d 1160, 1191–92 (10th Cir. 2012); Bridge Assocs. L.L.C. ex rel. Torch Liquidating Tr. v. Stockstill, 561 F.3d 377, 387 (5th Cir. 2009); Guttman v. Martin (In re Railworks Corp.), 325 B.R. 709, 718–19 (Bankr. D. Md. 2005). Third-party standing under section 1123(b)(3)(B) is commonly granted to trustees of liquidating trusts, plan administrators and unsecured creditors' committees, who were appointed in the confirmed Chapter 11 plan. As the bankruptcy court observed in In re Pro Greens, Inc.:

> This is not to say that in a Chapter 11 case, a non-trustee may not attain derivative standing. A reorganization trustee, post-confirmation, may pursue claims, including avoidance actions against third parties, on behalf of the estate if the confirmed plan and order of confirmation so provides. It is a common provision in an order of confirmation to specifically retain jurisdiction by the court over the enforcement of choses of actions.

Syndicate Exch. Corp. v. Duffy (In re Pro Greens, Inc.), 297 B.R. 850, 856 (Bankr. M.D. Fla. 2003).

The court in In re Stockstill observed that section 1123(b)(3) allows a chapter 11 plan of reorganization to retain and to transfer the right to enforce a claim or interest to a debtor, a trustee or a representative of the estate appointed for such purpose. In re

---

[4] Rabo cites only one case—In re Foster, 516 B.R. 537 (B.A.P. 8th Cir. 2014)—to support the proposition that "nothing indicates that derivative standing is limited to only prior to confirmation." See Doc. 597 at 3. The In re Foster court considered a creditor's tardy motion for derivative standing to pursue a fraudulent transfer claim in a Chapter 7 case. In re Foster, 516 B.R. at 541–45. This case is not helpful to the Court's analysis.

Stockstill, 561 F.3d at 387. "To show standing based on a plan's effectuation of such a transfer, the [representative] must show: '(1) that is has been appointed, and (2) that it is a representative of the estate.'" Id. (citations omitted).[5]

The bankruptcy court's approval of a plan that clearly transfers the right to enforce a claim or interest to a representative of the estate satisfies the first element. See id.; see also In re Paige, 685 F.3d at 1191 ("'The first element requires that the appointed party be approved by the court, which can be accomplished simply by approval of [a] plan' that expressly authorizes the party to prosecute claims post confirmation.") (quoting Retail Mktg. Co. v. King (In re Mako), 985 F.2d 1052, 1054 (10th Cir. 1993)); In re N. Atl. Millwork Corp., 155 B.R. 271, 281 (Bankr. D. Mass. 1993) ("Courts are in agreement that provisions in confirmed plans conferring on a particular party the right to bring a particular action are sufficient to constitute the 'appointment' required by section 1123.") (citations omitted).

As discussed above, there are no provisions in the Confirmed Plan that retain the bankruptcy estate's Chapter 5 causes of action or transfer the right to enforce them to Rabo, a creditor or any other representative of the estate appointed for the purpose of enforcing these claims. Rabo has not shown that it was appointed to pursue the causes of action it alleges on behalf of the Debtor or the estate. Granting Rabo derivative standing without such a plan provision would impair the binding nature of the Confirmed

---

[5] The In re Railworks Corp. court suggested there is a statutorily explicit third requirement—"The claims that are being reserved by the plan for later enforcement and adjudication must belong to the estate or to the debtor." 325 B.R. at 715. The relief that the Court considered in this Order is premised on this requirement, and its ruling is limited by it.

Plan. See In re WorldCom, Inc., 351 B.R. at 133.[6] Rabo did not satisfy the first element.

To meet the second element to establish standing under section 1123(b)(3), Rabo must show that it is a representative of the bankruptcy estate. "Although the courts apply a case-by-case approach to determine the second element, it is generally satisfied if a successful recovery by the trustee would benefit the debtor's unsecured creditors." Stockstill, 561 F.3d at 387–88 (citations omitted); Premium of Am., LLC v. Sanchez (In re Premium Escrow Services, Inc.), 342 B.R. 390, 400 (Bankr. D.D.C. 2006) ("The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly [ ] the debtor's unsecured creditors." (quoting Citicorp Acceptance of Colo., Inc. v. Robison (In re Sweetwater), 884 F.2d 1323, 1327 (10th Cir. 1989) (internal quotation marks omitted))). "In instances in which the purported representative has been found to be a 'stranger' to the bankruptcy estate, such that a successful recovery would only benefit the representative and not the estate or its unsecured creditors, courts have concluded that § 1123 does not authorize such a party to prosecute a claim, in spite of a provision in a plan of reorganization that authorizes the representative to do so." In re Railworks

---

[6] In In re Worldcom, Inc., a former shareholder moved for derivative standing to pursue breach of fiduciary duty causes of action. 351 B.R. at 132. He was not appointed by the plan to pursue the claim; the plan vested the right to pursue claims on behalf of the debtor (WorldCom, Inc.) in the reorganized debtor. Id. at 133. The bankruptcy court denied a former shareholder's motion for derivative standing because the confirmed Chapter 11 plan did not authorize individual stockholders to bring claims on behalf of the reorganized bankruptcy estate. Id. The confirmed plan reserved the cause of action for the reorganized debtor, and the former shareholder had not objected to confirmation. Id. The court found that granting the motion for derivative standing would impair the binding nature of the confirmed plan and interfere with its implementation. Id. at 134.

Corp., 325 B.R. at 719 (quoting In re Amarex, 96 B.R. 330, 334 (W.D. Okla. 1989) (internal quotations omitted)).

Rabo offers no evidence that granting it derivative standing would benefit Debtor's unsecured creditors or the bankruptcy estate.[7] It argues that Debtor's attorneys and other professionals must be paid from unsecured assets, and it claims that it would not be the only party that benefits from the recovery of fraudulently transferred assets. Doc. 597 at 2. According to the terms of the Confirmed Plan, Debtor agreed to pay general unsecured claims in full within 30 days of the effective date of the Confirmed Plan. The Confirmed Plan provided for prompt payment of priority and administrative claims as well. Rabo offered no evidence that Debtor failed to pay these creditors or that professional fees were pending at the time of confirmation. Rabo, who was treated as a secured creditor in the Confirmed Plan, is the only creditor of the bankruptcy estate that will benefit from this litigation. It failed to meet the second element.

---

[7] In its brief in opposition to Kip and Andrea Richards' motion [Doc. 582], Rabo argues that it "believed itself to be fully secured at the time the Debtor filed its bankruptcy petition, however, through the erosion of its collateral as well as Debtor's significant delay in effectuating liquidation of its assets under the plan, it has a significant portion of unsecured debt." Doc. 582 at 5. Rabo's status as a secured creditor was determined at the time of confirmation. In the Confirmed Plan, Rabo is treated as a secured creditor. See Doc. 294. The Confirmed Plan does not provide that Rabo held an unsecured claim or a partially-secured claim. Rabo's suggestion that its claim falls within Class 4 (General Unsecured Creditors) when neither Debtor nor Rabo made such a claim at the time of confirmation or in the Confirmed Plan is rejected. Section 10.2(a) of the Confirmed Plan specifically enjoins the holder of a claim from seeking or receiving payment or distribution from the plan except as expressly provided by the plan. Id. at 13. Its status as a secured creditor (with no unsecured claim) remains until or unless the Confirmed Plan is modified. More importantly, Rabo offered no authority supporting its claim that the Court may or must consider its postconfirmation partially-secured status in determining whether the bankruptcy estate may benefit by the Court granting Rabo derivative standing.

11

Accordingly, the Court finds that it is appropriate to reconsider its order granting Rabo derivative standing.  Debtor did not reserve to a representative of the bankruptcy estate or a creditor (like Rabo) the bankruptcy estate's interest in causes of action under Chapter 5 of the Bankruptcy Code or Nebraska law in the Confirmed Plan.  Consequently, the Court may not grant Rabo derivative standing to pursue a claim that the estate owned before it was dissolved.  The equitable considerations cited by Rabo do not supersede the authority the Court cited above.  Rabo's motion for derivative standing is denied.

### III.     CONCLUSION

**IT IS ORDERED:**

1. The Motion to Reconsider or Amend Order Granting Rabo AgriFinance Derivative Standing to Prosecute Claims Against Debtor filed by Kip and Andrea Richards Family Farm & Ranch, L.L.C. (Doc. 576) is granted.

2. The Order Granting Motion for an Order Granting RaboAgriFinance, LLC Derivative Standing to Prosecute, on Behalf of the Estate, Those Claims Against the Debtor Related to the Fraudulent Transfer of Vehicles, Unauthorized Use of Cash Collateral, and Other Related Claims (Doc. 567) is vacated.

3. The Motion for an Order Granting RaboAgriFinance LLC Derivative Standing to Prosecute, on Behalf of the Estate, Those Claims Against the Debtor Related to the Fraudulent Transfer of Vehicles, Unauthorized Use of Cash Collateral, and Other Related Claims (Doc. 530) is denied.

4. The Court will address the effect of this ruling and whether Rabo

AgriFinance, LLC has standing to bring any of the claims and causes of action it alleged in its Complaint (Adversary Proceeding No. 19-4001) in the context of the adversary proceeding. The extent to which any release included in the Confirmed Plan may bar Rabo from asserting claims is a defense Kip and Andrea Richards may raise in the adversary proceeding. The Court finds it unnecessary to address this argument in the context of the motion before the Court.

Dated: September 30, 2019.

/s/ Shon Hastings

_____
Shon Hastings, Judge
UNITED STATES BANKRUPTCY COURT