UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | Case No: BK15-40070 |
| | ) | |
| KIP AND ANDREA RICHARDS FAMILY | ) | CHAPTER 11 |
| FARM & RANCH, LLC, | ) | |
| | ) | |
| Debtor. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND ORDER GRANTING MOTION FOR CIVIL CONTEMPT AND SANCTIONS**

On April 9, 2019, Movants Kip and Andrea Richards filed a Motion to Amend Order Granting Motion for Civil Contempt and Sanctions. Doc. 577. Rabo AgriFinance, LLC opposed the motion. The Court held hearings on the motion on June 5, 2019, and June 28, 2019.

## I.    BACKGROUND

Rabo filed a Motion for an Order Under 11 U.S.C. §1142 Directing Debtor to Comply with the Confirmed Plan on July 6, 2018. Doc. 423. Three days later, the Court entered the following text Order:

> Order Directing Movant to Serve Notice of its Motion for an Order Under 11 U.S.C. Section 1142 Directing Debtor to Comply with the Confirmed Plan (RE: related document(s) 423 Motion to Compel filed by Creditor Rabo Agrifinance, Inc.). Because Rabo Agrifinance, Inc. seeks an order compelling third parties Larry Richards, Kip Richards and Andrea Richards to comply with the confirmed plan, it must properly serve notice on them. Movant shall serve all interested parties not later than July 13, 2018 and file proof of service not later than July 27, 2018. If movant fails to properly serve all interested parties, the Motion for an Order Under 11 U.S.C. Section 1142 Directing Debtor to Comply with the Confirmed Plan will be deemed abandoned. ORDERED by Judge Shon Hastings. (Text Only Order) (dkk) (Entered: 07/09/2018).

Doc. 424. Rabo filed a Certificate of Service noting that it served CM/ECF participants and "non-CM-ECF participants named on the current matrix" with the motion and

hearing notice.  Doc. 426.

The Court held a hearing on the motion on August 1, 2018.  Neither Kip Richards nor Andrea Richards appeared at the hearing.  The Court granted the motion in part, ordering Debtor to deed the tract of real estate owned by Debtor, which includes the house where Kip and Andrea Richards reside as well as outbuildings.  Doc. 432.  The Order clarified that the legal description in the warranty deed shall except a specifically-described 10-acre parcel of land on which Kip and Andrea Richards' residence is located.  Doc. 432.  Rabo drafted a warranty deed transferring this real property.  See Doc. 438.  The Court entered an order compelling Debtor to execute the warranty deed. Docs. 496, 527.  Kip and Andrea Richards did not seek to amend this Order.

During the hearing and in the August 2, 2018, text Order, the Court also ruled on issues related to machinery, equipment and vehicles.  It ordered:

> Rabo's motion to compel Debtor to sell titled vehicles, machinery and equipment is granted in part and denied in part. For the reasons stated on the record, Rabo's request that Debtor be compelled to sell titled vehicles is denied. Rabo's motion to compel Debtor to sell (or deliver to Rabo) machinery and equipment owned by Debtor on the date of confirmation is granted with the following conditions: Not later than September 4, 2018, Rabo shall file a list of machinery and equipment with evidence that Debtor owned it on February 27, 2017, the date the Court confirmed the plan. Rabo shall serve notice of this list on interested parties advising that the Court will compel Debtor to sell this machinery and equipment or deliver it to Rabo (or an auctioneer of its choice) unless an objection is filed on or before September 18, 2018. If no party objects to the list, the Court shall compel sale or transfer. If the Court receives an objection from an interested party, it shall hold a hearing on this matter on September 24, 2018 at 2:30 pm. ORDERED by Judge Shon Hastings. (Text only order) (drs) (Entered: 08/02/2018).

Doc. 432.

After it received an extension of time to file the machinery and equipment list, Rabo filed its Proposed List of Debtor's Vehicles, Machinery and Equipment to Be Sold

with supporting exhibits on October 22, 2018.  Docs. 463–478 (including exhibits refiled per the Clerk of Court).  Rabo served the list, supporting documents and the Text Order (Doc. 452) on CM/ECF participants and "non-CM-ECF participants named on the current matrix."  Doc. 479.

The Court scheduled a hearing on the Motion to Compel Debtor to Comply with Confirmed Plan [Doc. 423] and Proposed List of Debtor's Vehicles, Machinery and Equipment to Be Sold [Doc. 463], which it continued several times but eventually held on December 12, 2018.  Rabo served notice of this hearing on CM/ECF participants, Debtor, Larry Richards and Kip and Andrea Richards.  Doc. 500.

Kip Richards did not attend the hearing on December 12, 2018.  During the hearing, the Court received evidence regarding the machinery and equipment owned by Debtor.  Doc. 524.  The Court found cause for granting the relief Rabo sought and ordered Debtor to deliver the machinery and equipment listed on Document 526[1] (including those items that were listed on Debtor's tax returns but not included in its schedules and monthly operating reports) to Big Iron Auction Company or turn it over to Rabo.  The Court granted Debtor until January 14, 2019 to comply.[2]  Docs. 523, 527. Debtor did not execute the warranty deed or deliver the machinery and equipment to Big Iron Auction Company or to Rabo.

---

[1] Document 526 includes a Certificate of Service dated December 18, 2018, in which Robyn L. Neal attests that Rabo mailed the Amended Proposed List of Equipment to be Sold to Kip and Andrea Richards through the United States Postal Service.

[2] Document 529 is a Certificate of Service dated January 2, 2019, in which Cindy R. Volkmer attests that Rabo mailed the Court's Order Granting Motion to Compel Debtor to Execute Warranty Deed [Doc. 527] to Kip and Andrea Richards through the Unites States Postal Service.

On January 24, 2019, Rabo filed a Motion for Civil Contempt and Sanctions Regarding Deed and Equipment.  Docs. 539, 541.  Rabo served notice of this motion on Debtor, Kip and Andrea Richards and Larry Richards.  Doc. 540.  The Court held a hearing on this motion on February 27, 2019.  Rabo appeared through counsel.  Debtor did not appear.  Kip Richards attended the hearing.

At the hearing, the Court asked Rabo about the remedies it sought as a result of Debtor's failure to comply with the Court's orders.  Based on the representations of Rabo's counsel, it appeared that Rabo was seeking a writ or writs under Rule 7070 of the Federal Rules of Bankruptcy Procedure, which the Court may enter after notice and a hearing.  See Fed. R. Bankr. P. 7070; In re Kerlo, 311 B.R. 256, 261–62 (Bankr. C.D. Cal. 2004); Health Sci. Prods., Inc. v. Taylor (In re Health Sci. Prods., Inc.), 191 B.R. 915, 918 and n.3 (Bankr. N.D. Ala. 1995).  The Court granted Rabo until the next day to provide a specific list of remedies it sought.  In its request for relief under Bankruptcy Rule 7070 filed February 28, 2019, Rabo sought a "writ of execution [] forcing the debtor to divest its title in real estate and equipment previously ordered to be conveyed and/or sold and vest that title in the creditor Rabo."  See Doc. 557.

In addition to addressing Rabo's request for sanctions and related remedies, the Court also addressed the pleadings Kip and Andrea Richards filed in response to the Court's Order to Show Cause and Rabo's motion for sanctions and motion seeking derivative standing.  See Docs. 533, 550, 551, 552.  Once again, the Court reminded those who attended the hearing that Debtor may not appear without counsel.  Based (in part) on Kip and Andrea Richards' pleadings, the Court postponed the matters for approximately 30 days to allow Debtor time to retain counsel and present its defenses

4

(if any) to the pending matters.

On March 26, 2019, the Court held a hearing on Rabo's request for sanctions. Docs. 539, 541. These sanctions included, but were not limited to, issuance of a writ of execution in accordance with Rule 70(d) of the Federal Rules of Civil Procedure, which applies to bankruptcy matters pursuant to Rule 7070 of the Federal Rules of Bankruptcy Procedure.  Rabo appeared through counsel.  Debtor did not appear.  Kip Richards attended this hearing.

For the reasons stated on the record, the Court granted Rabo's Motion for Civil Contempt and Sanctions Regarding Deed and Equipment [Docs. 539, 541].  See Doc. 569.  Pursuant to Rule 7070, the Court entered an Order and Judgment divesting Debtor of title to the real estate at issue [Doc. 438, Ex. A] and vesting it in Rabo as a sanction for Debtor's failure to execute the warranty deed as ordered by the Court. Docs. 578, 579.   The Court also entered a Writ of Execution granting authority to repossess and sell the machinery and equipment listed in Document 526 as a sanction for failure to voluntarily turn over the machinery and equipment to Rabo or sell this machinery and equipment and submit the proceeds to Rabo.  Doc. 574.

On April 9, 2019, Kip and Andrea Richards filed a Motion to Amend Order Granting Motion for Civil Contempt and Sanctions.  Doc. 577.  Rabo filed an objection. Doc. 581.

The Court held a telephonic evidentiary hearing on June 5, 2019.  Doc. 587. During the hearing, the Court clarified that it determined, based on the undisputed evidence before it at the time, that Debtor owned the property listed on the Writ of Execution during the December 2018 hearing.

The Court also recognized that Nebraska law allows a third party to contest ownership after a writ is executed and expressed that it would allow a third party the right to be heard.  The Court asked the parties whether they would agree to the determination of ownership before the writ is executed (as opposed to after it is executed as provided by Nebraska law) to save time and expense, and counsel for Kip and Andrea responded that they "certainly would."  The Court indicated that it would consider the issue within the context of the motion to amend.  If Kip and Andrea prevailed, the Court would modify the list of equipment and machinery in the Writ of Execution to exclude any property the Court found they owned.  If they did not prevail, the list in the Writ of Execution would remain unchanged.  Given that understanding, the Court asked whether the parties agreed that an evidentiary hearing on the motion to amend was appropriate.  Counsel for Kip and Andrea Richards stated, "Based on the Court's analysis and findings, I agree."  Rabo asserted no objection to the procedure proposed.

Kip and Andrea Richards agreed to submit a list of the equipment they claimed to own.  On June 14, 2019, they filed this list, which included approximately 42 pieces of equipment they claimed to own and 17 pieces of equipment that they asserted were duplicative entries.  Doc. 595.  The Court held an evidentiary hearing by videoconference on June 28, 2019.  Doc. 654.

## II.    FINDINGS OF FACT

During the June 28, 2019, hearing, Kip and Andrea Richards offered and the Court received the following evidence regarding who purchased machinery and equipment and when it was purchased:

| Date of Purchase | Who Purchased | Machinery or Equipment | Evidence[3] |
|---|---|---|---|
| | | Case IH 1030 tractor w/ loader | |
| | | Case IH 800 tractor | |
| | | Case IH 830 tractor | |
| | | Farmall 460 tractor with loader | |
| | | Case IH 1570 tractor | |
| | | Case IH 2670 4-wheel drive | |
| | | Case 1030 w/ Farm Hand | |
| | | Case 1370 w/ John Deere Dozer | |
| | | Case International 2594 tractor | |
| | | Case IH 3294 tractor | |
| 2006 | K. Richards | MX 285 Tractor | Ex. 602, 606 |
| | | WD Allis Chalmers tractor w/ Loader | |
| 2008 | K. Richards | John Deere 4450 – 140 HP | Ex. 603, 633, 634 |
| 2008 | K. Richards | 460 International tractor w/ Dual Loader | Ex. 633, 634 |
| 2009 | K. Richards | 4040 Tractor w/ 158 Loader & Joy Stick | Ex. 604, 634 |
| 2008 | K. Richards | 740 John Deere Loader w/ Joy Stick | Ex. 605 |
| 2006 | K. Richards L. Richards | GB 870 Loader | Ex. 606 (both names on Ex. 606. Kip Richards testified his dad co-signed but Kip paid for it and owns it), 631, 632, 633, 634 |

---

[3] In addition to the exhibits noted below, Kip Richards testified that each exhibit Movants offered showed that he purchased the corresponding piece of equipment or machinery.

| | | Dual 3750 Loader | |
|---|---|---|---|
| | | GB 870 Loader | Duplicative entry; see two lines above |
| 2006 | K. Richards | 2006 Case IH Round – RBX563 | Ex. 607, 631, 632, 633, 634 |
| 2010 | K. Richards | John Deere 568 Baler | Ex. 608 |
| 2006 | K. Richards | 2002 Atchison Bale Trailer | Ex. 609 |
| | | Mc Don 1100 Bale Retriever | |
| 2008 | K. Richards | Krause 3190 Soil Conditioner Finisher | Ex. 603 |
| | | Krause 3190 Soil Finisher | Kip Richards testified this entry is a duplicate of the one above and he only owned one of these. |
| | | Kelly Ryan Feed Wagon | |
| | | Farm Hand Feed Wagon | |
| 2009 | K. Richards | Roto Mix Feed Wagon | Ex. 610 |
| | | Farmhand Feed Wagon (2) | |
| | | John Deere 27' Stalk Chopper | |
| | | 8 Row Stalk Chopper | |
| 2007 | K. Richards | Vermeer Twin 2040 Rake | Ex. 611. Receipt notes Kip Richards paid for half; Kip testified he paid other half later that year. |
| | | Farm Hand Stack Hand | |
| | | Stack Mover | |
| | | Krause 25' Disc | |
| 2008 | K. Richards | Krause 4903 Disc | Ex. 603 |

8

| | | | |
|---|---|---|---|
| | | Krause 25' Disc | |
| | | John Deere 16' One Way Disc | |
| | | Miller 22' Disc | |
| | | Case IH 25' Soil Conditioner | |
| | | 3 point 10' Hydro Blade | |
| 2012 | K. Richards | Rhino R 950 3 point 3-way Blade | Ex. 648 |
| | | Richardson 5x5 v-blade | |
| | | Sunflower 5x5 v-blade | |
| | | Big OX 6 shank Ripper | |
| | | John Deere 855 8 Row Cultivator | |
| | | Buffalo 8 Row Cultivator | |
| | | KMC 8 Row Cultivator | |
| | | Adams Maintainer | |
| | | 425 Soil Mover (2) | |
| | | Model 1000 Soil Mover | |
| | | John Deere 3970 Chopper | |
| | | Case 5 Bottom Plow | |
| | | Massey 4 bottom Spinner Plow | |
| | | Ford 5 bottom spinner plow | |
| | | Blue Jet Props – 9 shank ripper | |
| | | Blue jet Props – 7 shank ripper | |
| | | Doarman 950 grain cart | |
| | | Wetmore 400 grain cart | |

9

| | | J&M model 1075 grain cart | Kip Richards testified this was sold prior to the bankruptcy. Ex. 636 |
| | | Hickory King 6x22' Trailer** | |
| 2006 | Laryl Richards[4] | Luftkin 50' hay trailer | Ex. 612 |
| | | Donahoe 30' trailer** | |
| | | Misc stock 16' trailer** | |
| | | Misc 16' car trailer** | |
| | | 20' low boy trailer** | |
| | | Mayrath 10'x62' Auger | |
| | | Westfield 36'x8" Auger | |
| | | Electric Drill Fill Auger (4) | |
| | | Mayrath 8"x64' Auger | |
| | | Otter 12' Dozer Blade | |
| | | Tucker 10' Speed Mover | |
| | | Buffalo Scout Guidance System | |
| | | Misc 3 point 8' snow blower | |
| | | Misc 3 point 7' mower | |
| | | 3 point 7' bar mower | |
| | | Air compressor | |
| | | GPS | |

[4] Laryl Richards is Kip Richards' deceased grandfather.  Kip Richards testified he was surprised to learn the trailer is in his grandfather's name.  He also testified that he purchased the trailer and paid licensing fees every year.  There is no evidence that this trailer was ever titled in Debtor's name.

|  |  | 1000 gallon fuel tank (2) |  |
|  |  | 3000 gallon fuel tank |  |
|  |  | John Deere 653(a) Flex head/row head |  |
|  |  | John Deere 224 Platform head |  |
|  |  | John Deere 846 8 row corn head |  |
| 2008 | K. Richards | Michigan Clark pay loader with 6.5 yard bucket | Ex. 613 |
|  |  | Generator from Budke powersports |  |
| 2011 | K. Richards | Miller welder and plasma cutter in shop | Ex. 614 |
| 2013 | K. Richards | Tire changing machine | Ex. 615 |
|  |  | Richardson tag along pickers (2) |  |
|  |  | Case IH 1200 8 row planter | Kip Richards testified this was sold pre-bankruptcy. Ex. 636 |
|  |  | Blue Jet track closer |  |
|  |  | Seed wheat cleaner |  |
|  |  | Richard dump wagon |  |
|  |  | 40' sweep harrow |  |
| 2015 | K. Richards | 2013 Caterpillar 287C skid steer | Ex. 616 |
| 2015 | K. Richards | Caterpillar grapple for skid steer | Ex. 616 |
|  |  | Steel chain saw |  |
|  |  | Railroad tie posts |  |
|  |  | 30' head trailer |  |
|  |  | Sunflower chisel w/ pickers |  |
|  |  | 15' chisel |  |

| | | | |
|---|---|---|---|
| | | Sunflower 24' chisel | |
| | | 870 Allis Chalmers wheel loader | |
| | | 30' rod weeder | |
| | | Sunflower 21' sweep machine | |
| | | Mic round bale feeders (8) | |
| 2012 | K. Richards | Feed bunks (10) | Ex. 620 (7 feed bunks); Ex. 651 (20 feed bunks) |
| 2007 | K. Richards | 8' creep feeder (2) | Ex. 618 |
| | | 12' creep feeder | Kip Richards testified neither he nor Debtor owned a 12-foot creep feeder. |
| | | 16' steel bunks (40) | Kip Richards testified he owns none of these and never has. |
| | | Working chute | |
| | | Feed bunks (10) | Ex. 620, 651. See notes above; Kip Richards testified he owns a total of 27 feed bunks and this entry is duplicative. |
| 2007 or 2008 | K. Richards | 4-bale feeder | Ex. 621 |
| | | Bale feeder (6) | |
| | | Welker cake bin at Chip's | |
| 2012 | K. Richards | Welker cake bin at feedlot | Ex. 622 |
| 2007 | K. Richards | 10' cattle panels (27) | Ex. 618 (40 panels) |
| | | Cattle panels & trailer | Ex. 623 re trailer only |

| 2007 | K. Richards | Porta panels (30) | Ex. 618. See above; (40 panels) |
|------|-------------|-------------------|------------------|
| 2012 | K. Richards | Titan west corrals | Ex. 647 |
| 2012 | K. Richards | Daniels working chute | Ex. 648 |
| 2013 | K. Richards | Ag Valley self-catching headgate | Ex. 624 |
|      |             | 3 point 2-bale fork | Ex. 625 |
|      |             | 3 point 1-bale bale fork | Ex. 625[5] |
| 2012 | K. Richards | Haybuster 2655 bale processor | Ex. 626 |
| 2012 | K. Richards | Deweeze bale bed & caker (Chip's pickup) | Ex. 627 |
| 2006 | K. Richards | Hydra Bed bale bed & caker (Kip's pickup) | Ex. 628 |
|      |             | Post hole digger | |
| 2013 | K. Richards | Polaris Ranger red ATV | Ex. 629 |
|      |             | 2001 4x4 Honda ATV | |
| 2006 | K. Richards | Honda 4-wheeler | Ex. 631, 632, 633, 634 |
| 2013 | K. Richards | Polaris Sportsman Blue ATV | Ex. 630 |
|      |             | Honda 2" transfer fuel pump w/ plumbing (3) | |
|      |             | Roto Manure Spreader | |
|      |             | Case IH Flexhead | |
|      |             | 32' Header Trailer | |
|      |             | 4020 Tractor | |
| 2008 | K. Richards | Disk, Finisher 4450 Tractor | Ex. 634. Kip Richards claims this entry is duplicative. Doc. 595. |

---

[5] The receipt filed as Exhibit 625 includes only one bale fork, but Kip Richards testified he owns this bale fork and the one listed in the line above.

| | | IH 460 tractor w/ loader | |
|---|---|---|---|
| 2008 | K. Richards | Cornhead | Ex. 633, 634 |
| 2008 | K. Richards | 740 Loader | Ex. 633, 634 |
| 2009 | K. Richards | 4 wheeler | Ex. 634 |
| 2007/2009 | K. Richards | Feed wagon | Ex. 632, 633, 634 [Duplicative – Doc. 595] |
| 2009 | K. Richards | JD 4040 Tractor | [Duplicative – Doc. 595] |
| | | JD baler | [Duplicative – Doc. 595] |
| | | Cattle scale | |
| | | Heat stove | |
| | | Drill | |
| | | Welder & Plasma Cutter | [Duplicative – Doc. 595] |
| | | Corral panels | [Duplicative – Doc. 595] |
| | | Equipment | |
| | | Bunks | [Duplicative – Doc. 595] |
| | | Computer | |
| | | Welker cake bin | [Duplicative – Doc. 595] |
| | | Haybuster 2655 bale processor | [Duplicative – Doc. 595] |
| | | Overhead storage bin | |
| | | Air compressor | |
| | | Well motor | |
| | | Skid steer | [Duplicative – Doc. 595] |
| | | Red Polaris | [Duplicative – Doc. 595] |

| | | Blue 550 4 wheeler | [Duplicative – Doc. 595] |
| | | Loading chute | |
| | | Working chute | [Duplicative – Doc. 595] |
| | | Tire Machine | [Duplicative – Doc. 595] |
| | | Self-catch head gate | [Duplicative – Doc. 595] |
| | | Skid Steer attachment | [Duplicative – Doc. 595] |
| | | Rake | [Duplicative – Doc. 595] |
| | | Generator | |

** On the list of machinery and equipment they filed on June 14, 2019, Kip and Andrea Richards include a note indicating that these pieces of property "are not claimed as owned by Kip and Andrea Richards but they have certificates of title and thus per prior Court orders should not be property that Rabo Agrifinance is entitled to take from the Debtor." See Doc. 595.

Rabo offered no evidence rebutting the Richards' claim that certain entries on the Writ were duplicative. It also offered no evidence disputing the number and type of creep feeders and feed bunks Debtor owned.[6]

According to Kip Richards, he transferred the pieces of machinery and equipment identified above to Debtor when it was formed in July 2010. He testified that the members of Debtor transferred property, including machinery and equipment, into Debtor in exchange for membership units. The corporate members did not document the property that each contributed to Debtor. Kip Richards also maintained that "the sole purpose of having the equipment in the LLC was, from a prior lending standpoint,

---

[6] Rather than disputing Kip and Andrea Richards' claim that they purchased the machinery and equipment listed above, Rabo offered evidence supporting their claim that this property is or should be deemed property of Debtor.

they needed the equipment to operate us." Despite this understanding and its impetus for Kip Richards to transfer his machinery and equipment to Debtor, the Richards claim Rabo's collateral for its loan to Debtor included only real estate and cattle and not machinery and equipment. Kip and Andrea Richards maintain that the members of Debtor therefore agreed Kip Richards could "take his equipment back out of the LLC" because they believed Rabo did not need machinery and equipment as collateral. Kip Richards testified that the members of Debtor transferred the property back to Kip Richards on July 15, 2012. In support of this claim, Kip and Andrea Richards offered Exhibit 637, which provides: "It is agreed upon by the members of the Kip & Andrea Richards Family Farm and Ranch LLC, that since Rabo AgriFinance does not need any equipment as security for the loans, the equipment that was transferred into the LLC by Kip Richards is transferred back to Kip Richards." Ex. 637.[7] The document is dated January 15, 2012, and signed by Larry Richards, Starla Richards, Kip Richards and Andrea Richards in their personal capacities, and by Larry Richards as power of attorney for Laryl Richards and as trustee of the Mary Ann Richards Trust. Id.

Despite the purported transfer of the machinery and equipment back to Kip Richards in July 2012, Debtor provided a list of equipment in the annual balance sheet it submitted to Rabo dated December 31, 2012, that included every item of equipment and machinery that Kip and Andrea Richards now claim to own. Doc. 643 at 7–10.

Also contrary to their claim that he reacquired the machinery and equipment in

---

[7] Kip testified that Exhibit 637 "was executed because after being in touch with Rabo AgriFinance and transferring our loans to them they needed a security agreement for the real estate and the cattle. They didn't need equipment, pickups, none of the other stuff. They specifically wanted the real estate and cows."

July 2012, Kip Richards represented that Debtor owned this property in the following

documents filed with this Court:[8]

| Date filed | Document No. | Document |
|---|---|---|
| 2/13/15 | 19 at 16, 20–23 | Petition - Schedule B[9] |
| 2/13/15 | 20 at 5[10] | SoFA |

As manager of Debtor, Kip Richards authorized Debtor to file the following

operating reports.  Andrea Richards prepared them.  Kip Richards reviewed the list of

property and never told Andrea to revise it.

| | | |
|---|---|---|
| 2/16/15 | 22 at 6–10 | January 2015 Monthly Operating Report |
| 3/09/15 | 25 at 6–9 | February 2015 Monthly Operating Report |
| 3/12/15 | 28 at 7–10 | Amended Feb./2015 Monthly Operating Report |
| 4/15/15 | 40-1 at 8–11 | March 2015 Monthly Operating Report |
| 5/14/15 | 45 at 7–10 | April 2015 Monthly Operating Report |
| 6/18/15 | 66 at 8–11 | May 2015 Monthly Operating Report |
| 7/15/15 | 74 at 8–11 | June 2015 Monthly Operating Report |
| 8/14/15 | 83 at 7–10 | July 2015 Monthly Operating Report |
| 9/14/15 | 94 at 7–10 | August 2015 Monthly Operating Report |
| 10/14/15 | 116 at 8–11 | September 2015 Monthly Operating Report |
| 11/16/15 | 131 at 7–10 | October 2015 Monthly Operating Report |
| 12/15/15 | 144 at 6–9 | November 2015 Monthly Operating Report |
| 1/15/16 | 168 at 6–9 | December 2015 Monthly Operating Report |
| 2/15/16 | 181 at 8–11 | January 2016 Monthly Operating Report |
| 3/11/16 | 192 at 11–14 | February 2016 Monthly Operating Report |
| 4/15/16 | 199 at 7–10 | March 2016 Monthly Operating Report |
| 5/27/16 | 223 at 6–9 | Amended Mar. 2016 Monthly Operating Report |
| 5/27/16 | 224 at 6–9 | April 2016 Monthly Operating Report |
| 6/22/16 | 244 at 7–10 | May 2016 Monthly Operating Report |
| 7/18/16 | 258 at 7–10 | June 2016 Monthly Operating Report |
| 8/10/16 | 263 at 6–9 | July 2016 Monthly Operating Report |

---

[8] Kip Richards made these representations in his capacity as managing member of Debtor.  He testified that he was the managing partner of Debtor until 2017.

[9] During his deposition taken on February 26, 2015, Kip Richards testified that the bankruptcy schedules were accurate.

[10] The Statement of Financial Affairs requires disclosure of all property owned by another person that a debtor holds.  Debtor checked "None."

| 9/19/16 | 270 at 7–10 | August 2016 Monthly Operating Report |
| 11/1/16 | 278 at 7–10 | September 2016 Monthly Operating Report |
| 11/22/16 | 291 at 6–9 | October 2016 Monthly Operating Report |
| 12/19/16 | 296 at 7–10 | November 2016 Monthly Operating Report |
| 1/19/17 | 300 at 7–10 | December 2016 Monthly Operating Report |
| 2/8/17 | 306 at 7–10 | January 2017 Monthly Operating Report |

The only representation of their machinery and equipment ownership interests the Richards made to the Bankruptcy Court before plan confirmation was Kip Richards' claim that he owned two pickups, a skid steer and an all-terrain vehicle.[11]

Debtor also claimed ownership of many pieces of machinery and equipment at issue in its 2015, 2016 and 2017 tax returns signed by Kip Richards.  See Doc. 508.

Kip and Andrea Richards' 2015 individual tax return did not include an entry for depreciation.  Doc. 512-1 at 11.  Similarly, Kip and Andrea Richards' 2016 individual tax return indicated depreciation totaling $2,492 related to a 2015 Suburban but no depreciation on farm equipment.  Doc. 513-1.  Kip and Andrea Richards' 2017 individual tax return filed in April 2018 lists depreciation totaling $29,235. Doc. 514.  Of this total, $4,235 related to the 2015 Suburban.

Debtor filed its Third Amended Plan on December 16, 2016.  Doc. 294.  The Third Amended Plan included provisions requiring Rabo to dismiss lawsuits against individual members of Debtor and requiring both parties to dismiss pending appeals. The Third Amended Plan also included injunction, exculpation and limitation of liability

---

[11] In bankruptcy filings, Debtor listed Kip Richards and Larry Richards as creditors of Debtor and listed collateral that they claimed to own in an attached schedule.  Doc. 19 at 26.  The schedule included two pickups, a skid steer and an all-terrain vehicle.  Id.  At the meeting of creditors on February 26, 2015, Kip Richards explained that he and his father were listed as creditors of Debtor in the schedules because, "We have equipment that was purchased for use by the LLC in our personal name."  Doc. 507 at 20.  He continued, "So, therefore, the equipment is in our name, but it is paid and used by the LLC."  Id. at 21.

clauses.  Rabo filed an objection to the plan.  Doc. 307.

On November 30, 2016, Rabo's attorney sent an email to Debtor's attorneys.

Doc. 641.  At the time, Rabo and Debtor were negotiating the terms of Debtor's plan of

reorganization.  In the email, Rabo's attorney addressed several sticking points,

including the possibility of Rabo's dismissal of litigation against Debtor's guarantors,

including Kip and Andrea Richards:

> As noted in earlier missives, we'll need signed, verified current balance
> sheets from the guarantors before we can begin to consider dismissal of the
> action against them.  As we discussed, the assessor shows value in Kip's
> home and acreage above his homestead exemption.  This value can go to
> administrative fees if nothing else.  As a rule, unless there is some value in
> pursuing the guarantors, Rabo is unlikely to waste its time and money
> pursuing them if it gets cooperation on the overall timely and orderly
> liquidation of livestock, equipment, vehicles and real estate.

Doc. 641.

In response, Kip and Andrea Richards signed a balance sheet on December 10,

2016, and provided it to Rabo.  Doc. 642.  The balance sheet itemized Kip and Andrea

Richards' fixed assets, including titled vehicles, a skid steer, an all-terrain vehicle and a

flatbed trailer.[12]  Doc. 642 at 2.  It did not list any other machinery or equipment as

assets.

On January 31, 2017, Rabo dismissed its state court action against the Richards.

Doc. 640.  Tim Thompson, one of Rabo's attorneys, testified at the hearing in this

matter.  He explained that Rabo was only willing to dismiss the action against the

guarantors after receiving the balance sheets that confirmed that the individuals were

not claiming an interest in Debtor's assets.  Attorney Thompson acknowledged that

---

[12] Larry and Starla Richards also provided signed balance sheets.  Doc. 642 at 4.

there had "always" been a dispute about the ownership of the skid steer and the all-terrain vehicle.

Debtor and Rabo eventually resolved Rabo's objections.  Debtor filed a stipulation, and Rabo withdrew its objection to the plan.  Docs. 309, 310.  The Court confirmed Debtor's Third Amended Plan of Reorganization with Addendum ("Confirmed Plan") on February 27, 2017.  Doc. 315.

Despite injunction provisions in the Confirmed Plan prohibiting claim holders from suing Debtor or the guarantors or members of Debtor, Rabo filed a Complaint against Larry Richards[13] on December 18, 2017, asserting, among other things, "several items identified on the LLC's schedules were not assets of the LLC upon filing, were sold or hypothecated during the pendency of the bankruptcy, or have been hidden, sold, or hypothecated since confirmation of the plan without the proceeds being deposited into the Debtor in Possession Account."[14]  Doc. 586-1 at 3–4.  Rabo sought a denial of Larry Richards' discharge under section 727(a)(2).  Id. at 1.  After trying the case, the Court denied Larry Richards a discharge.[15]

---

[13] Larry Richards filed a petition for bankruptcy relief under Chapter 7 bankruptcy on August 31, 2017.  Rabo filed an adversary proceeding in that case.

[14] Rabo also sued Larry and Starla Richards, Larry Richards as the Trustee of the Mary Ann Richards Testamentary Trust and Laryl Richards.

[15] Kip and Andrea Richards argue that the Court should not employ any equitable doctrine—including equitable estoppel or unclean hands—to bar them from enforcing their interests in the machinery and equipment because of Rabo's "unlawful conduct." Doc. 655 at 1.  Specifically, Kip and Andrea Richards argue that Rabo "breached the terms of the Confirmed Plan by seeking and obtaining judgment against Larry Richards, a guarantor."  Doc. 655 at 1.  They claim that Rabo's only grounds for pursuing the equipment and machinery is the Confirmed Plan and assert that Rabo may not breach the Confirmed Plan while seeking to enforce the terms of it.  Id.  Whether Rabo breached terms of the Confirmed Plan by suing Larry Richards is not at issue in this matter.  Months ago, the Court found that Debtor breached the Confirmed Plan and

### III.    ANALYSIS

At the hearings on the motion, Kip and Andrea Richards claimed they purchased and own numerous pieces of equipment listed in the Writ of Execution.  Although Kip Richards testified that he transferred virtually all of their machinery and equipment to Debtor, Kip and Andrea Richards claim Debtor transferred it back to them prior to petitioning for bankruptcy relief.  Despite the *purported* transfer of the machinery and equipment back to the Richards, Debtor's bankruptcy schedules (that Kip Richards declared were true and correct) and its operating reports (that Andrea Richards prepared) and the corporate tax returns (that Kip Richards signed) reflect that Debtor owned this property.  Kip and Andrea Richards claim these documents were inaccurate and argue that these filings are not documents of ownership.  In response, Rabo asserts that Kip and Andrea Richards should be equitably estopped from claiming ownership of the equipment listed in the Writ of Execution.

To prevail under a theory of equitable estoppel under Nebraska law,[16] Rabo must

---

entered Orders enforcing the terms of it, including the Writ of Execution.  The purpose of the June 2019 hearings was to grant Kip and Andrea Richards (who are the parties seeking equitable relief) an opportunity to claim their interest in the property listed in the Writ of Execution.  Kip and Andrea Richards have not shown how Larry Richard's potential breach of contract claim against Rabo is relevant to their claims to specific pieces of machinery and equipment reportedly owned by Debtor.

[16] "'When a claim of equitable estoppel is made with respect to a federal statute, federal law principles of equitable estoppel apply.'"  In re Wertz, 557 B.R. 695, 705 (Bankr. E.D. Ark. 2016) (quoting Heflin v. Santander Consumer USA, Inc. (In re Heflin), 464 B.R. 545, 553 (Bankr. D. Conn. 2011)).  Although Kip and Andrea Richards seek an equitable remedy in this bankruptcy case, the issue before the Court is whether movants hold an enforceable ownership interest in the machinery and equipment at issue.  The Court is not required to apply the Bankruptcy Code to resolve this issue.  "'In the absence of a controlling federal rule, we generally assume that Congress has left the determination of property rights in the assets of a bankrupt's estate to state law, since such [p]roperty interests are created and defined by state law.'"  The Paddock, LLC v. Bennett (In re Bennett), 917 F.3d 676, 679 (8th Cir. 2019) (quoting Nobelman v.

establish:

> (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel.

Olson v. City of Atkinson, Nebraska, 2018 WL 6421723, at *3 (D. Neb. Dec. 6, 2018)

(citing Woodard v. City of Lincoln, 588 N.W.2d 831, 836 (Neb. 1999)).

Kip and Andrea Richards did not specifically dispute that Rabo met the first three elements of equitable estoppel in this case, and the Court finds that Rabo satisfied them.  Regarding the first two elements, Rabo established that Kip Richards, in his capacity as the managing member of Debtor, made repeated false representations and

---

Am. Sav. Bank, 508 U.S. 324, 329 (1993) (internal quotations omitted)).  Consequently, the Court will apply Nebraska state law equitable estoppel principles.

Even if the Court applied the elements of equitable estoppel under federal law, the outcome would not change because the equitable estoppel elements under Nebraska law subsume the elements under federal law.  Under federal law, a party may be estopped from pursuing a claim or defense where:

> (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts: (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

Porter v. Sun Life & Health Ins. Co., 808 F. Supp. 2d 1156, 1174 (W.D. Mo. 2011) (quoting Nat'l Companies Health Benefit Plan v. St. Joseph's Hosp., 929 F.2d 1558, 1572 (11th Cir.1991)); see also Dawkins v. Fulton Cty. Gov't, 733 F.3d 1084, 1089 (11th Cir. 2013) (listing the elements of equitable estoppel under federal common law).

concealed material facts related to the ownership of most of the machinery and equipment at issue. In the schedules Debtor filed in this case and in the tax returns Debtor filed with taxing authorities, Kip Richards represented that Debtor owned the large majority of the machinery and equipment in the Writ of Execution. He also authorized Debtor to file operating reports that included this machinery and equipment. Consistent with these representations, Kip and Andrea Richards did not list most of this machinery and equipment on their 2015 and 2016 personal tax returns or in the balance sheet they provided to Rabo shortly before plan confirmation. Conversely, Kip Richards testified at the June 28, 2019, hearing that he owned many of the pieces of machinery and equipment, making his earlier representations on the schedules, operating reports and other documents false representations. Kip Richards' misrepresentations were calculated to convey the impression that Debtor owned the machinery and equipment at issue. By intentionally making these representations, Kip Richards knew and intended that Rabo would act upon, or be influenced by, his misrepresentations that Debtor owned the machinery and equipment.

Kip and Andrea Richards urge the Court to excuse their misrepresentations because they did not prepare the documents containing the misrepresentations and the misrepresentations were the result of mistake or neglect. The Court declines the invitation to excuse this conduct, and it is not convinced the representations were the result of mistake or neglect. Kip Richards, in both his individual and corporate representative capacities, made false representations regarding the ownership of the machinery and equipment at issue in this case multiple times and in multiple contexts. He willfully and dishonestly misrepresented his ownership interest in the machinery and

equipment—either in the schedules, operating reports and tax returns or at the hearings
on June 5 and 28, 2019.

The Court is similarly convinced that Kip Richards had actual knowledge of the
real facts.  He was one of the shareholders of Debtor, acted as the corporate
representative and served as its manager before confirmation and after confirmation for
a period of time.  Based on the evidence, he was the person with the most detailed
knowledge of corporate assets.  Further, if the document transferring the machinery and
equipment from Debtor back to Kip Richards is genuine, Kip and Andrea Richards'
signatures on the document transferring the property proves their knowledge that the
representations in the documents filed with the Bankruptcy Court were false.  See Doc.
637.

Kip and Andrea Richards' arguments against the application of equitable
estoppel pertain to the remaining three elements.  Specifically, they assert that Rabo
knew or should have known that the schedules were incorrect, and it was not harmed
by these misrepresentations.  Kip and Andrea Richards also argue that Rabo is a
sophisticated creditor that had a duty to investigate whether Debtor owned the assets it
listed on schedules, reports and tax returns.  If it had, it would have known the
representations were false.

In response to these arguments, Rabo asserts that Kip Richards claimed an
interest in a few pieces of machinery and equipment, but it had no information before
plan confirmation suggesting Kip and Andrea Richards claimed an interest in all the
items listed above.  At the meeting of creditors, Kip Richards testified that he and his

father owned two pickups, a skid steer and an all-terrain vehicle.[17] Kip Richards did not mention an interest in other machinery and equipment at the time. Similarly, Kip and Andrea Richards provided a balance sheet to Rabo during plan negotiations, which included approximately ten pieces of personal property. Relying on these representations, Rabo asserts that there was nothing to "raise Rabo's antennae" that Debtor did not own the property it claimed to own in the schedules and operating reports. The Court agrees and finds that Rabo, exercising reasonable prudence, had neither the knowledge nor a reason to explore the issue further. Rabo met its burden of proving the fourth element.

Regarding the fifth element, Kip and Andrea Richards assert Rabo presented no evidence that it relied on the false representations. In response, Rabo claims that its reliance is evidenced by its willingness to reach a stipulated plan. Rabo argues it relied on Debtor's representations that it owned its assets, including machinery and equipment. The machinery and equipment were part of the plan negotiations. The Confirmed Plan provided for the liquidation of machinery and equipment, and the schedules and operating reports listed the machinery and equipment. Rabo argued that the attorneys on both sides "were operating in the utmost of good faith to try to reach a resolution, and there was no reason, at that time, to have insisted on each item of equipment being listed because all of us knew that we were talking about the equipment in the schedules. They were supposed to sell all of the LLC equipment. We relied on the schedules to identify that equipment." Rabo asserts that the schedules and other bankruptcy filings are sacrosanct to the bankruptcy process and argues that it was

---

[17] Rabo acknowledges that it knew Kip and Andrea Richards claimed they owned the skid steer and all-terrain vehicle.

entitled to rely on the schedules as a matter of law, and it relied on them.

In all bankruptcy cases, debtors have a duty to file a complete and accurate list of their assets and liabilities.  11 U.S.C. § 521; see In re Grasso, 586 B.R. 110, 145 (Bankr. E.D. Pa. 2018) (stating that the duties imposed by section 521 are among the most significant imposed upon a debtor in bankruptcy); Farmers Union Oil Co. v. Zinke (In re Zinke), 1994 WL 1887495, at *6 (Bankr. D.N.D. Apr. 18, 1994) (citations omitted) ("The veracity of a debtor's statements and schedules filed pursuant to § 521 is unquestionably critical to the effective administration of the bankruptcy process.").  As the court in In re McLaren stated:

> It is a fundamental necessity in bankruptcy that the information which debtors provide in their petition, schedules and statement of financial affairs be accurate, thorough, and reliable. In this respect, debtor has an uncompromising duty to disclose whatever ownership interest he holds in property. The importance of these pronouncements cannot be understated; the bankruptcy system as a whole and each particular case which forms a component part of it, cannot function without the honest and forthcoming efforts of its debtors.

Kaler v. McLaren (In re McLaren), 236 B.R. 882, 894 (Bankr. D.N.D. 1999) (internal quotations and citations omitted).  The duty continues throughout the case and requires a debtor to amend its schedules whenever it becomes necessary to ensure the accuracy and reliability of the information disclosed.

Rabo, as a party in interest, was entitled to rely on the representations in Debtor's schedules.  See In re Grasso, 586 B.R. at 145–46 (recognizing that debtor's creditors rely on the accuracy of a debtor's disclosures in schedules); USinternetworking, Inc. v. Gen. Growth Mgmt., Inc. (In re USinternetworking, Inc.), 310 B.R. 274, 281 (Bankr. D. Md. 2014) (describing the purpose of the disclosures in the bankruptcy schedules to be allowing parties in interest to rely on them during the

administration of the case); Okan's Foods, Inc. v. Windsor Ass'n Ltd. P'ship (In re Okan's Foods, Inc.), 217 B.R. 739, 753 (Bankr. E.D. Pa. 1998) (citations omitted) (stating that a party in interest is entitled to rely on the information in a debtor's schedules and disclosure statement); see also Gordon Car & Truck Rental, Inc. (In re Gordon Car & Truck Rental, Inc.), 65 B.R. 371, 377 (Bankr. N.D.N.Y. 1986) ("When individual property is represented to creditors as corporate property, and creditors rely on that representation, the person making the initial representation is estopped from making a different representation to the detriment of the creditors.") (citations omitted); Kaiser v. Wise (In re Telemark Mgmt. Co., Inc.), 43 B.R. 579, 586 (Bankr. W.D. Wis. 1984) (same).  Not only is Rabo entitled to rely on the accuracy of Debtor's disclosures, the Court finds that it actually relied on them in this case.  The Confirmed Plan proposed after lengthy negotiations between Debtor and Rabo—which included Debtor's promise to sell its machinery and equipment—is evidence of this reliance.

Kip and Andrea Richards' suggestion that they should be excused from their role in making repeated false representations on the schedules and in the operating reports because they "did not cause fraud upon any party" is rejected.  See Doc. 655 at 3.  Kip and Andrea Richards caused harm to Rabo and also to the reliability and integrity of the bankruptcy process.

Rabo also relied on Kip and Andrea Richards' representations in their individual balance sheet in which they disclosed only a few pieces of property they claimed to own.  Rabo dismissed its litigation against Kip and Andrea Richards as guarantors of Debtor in reliance on these representations.  Accordingly, Rabo met its burden of showing that it relied, in good faith, on Kip Richards' false representations in his

personal capacity and in his capacity as representative of Debtor.

The last element requires "action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel." Olson, 2018 WL 6421723, at *3. Kip and Andrea Richards claim that Rabo did not perfect a security interest in machinery and equipment prior to Debtor's bankruptcy petition, and it did not insist that Debtor include a detailed list of machinery and equipment in the Confirmed Plan; consequently, it will not be harmed by an amended writ excluding the property Kip and Andrea Richards claim they own. The Court is not persuaded. Rabo agreed to a stipulated plan in reliance on the representation in the Confimred Plan that Debtor would liquidate its machinery and equipment and in reliance on the schedules and operating reports representing that Debtor owned certain equipment. It also dismissed its litigation against Kip and Andrea Richards as guarantors of Debtor in reliance on their individual balance sheet. Rabo offered evidence sufficient to meet the fifth element.

For these reasons, the Court concludes that Kip and Andrea Richards are equitably estopped from asserting ownership to any of the machinery and equipment at issue except the skid steer, all-terrain vehicle and titled vehicles. Kip Richards consistently asserted an ownership interest in the skid steer and all-terrain vehicle. He is not estopped from asserting a claim to them now. Further, the Court finds that Kip Richards owns these pieces of equipment.

In earlier proceedings, the Court entered an order denying Rabo's request to compel Debtor to sell titled vehicles. Doc. 432. In its oral ruling, the Court explained that the Confirmed Plan and related stipulations did not include titled vehicles among

the assets Debtor agreed to liquidate to pay Rabo.  See Doc. 430.  To the extent that

the Writ of Execution included titled vehicles, the Court will amend the list of machinery

and equipment to exclude them.  The Court will also amend the Writ of Execution to

delete duplicative entries and remove items never owned by the Richards or Debtor,

consistent with the Court's findings above.

The Court considered all other arguments and finds them without merit.

## IV.    CONCLUSION

For the reasons stated above and articulated at the June 5, 2019 and June 28,

2019 hearings, **IT IS ORDERED**:

1.  Kip and Andrea Richards' Motion to Amend Order Granting Motion for Civil

    Contempt and Sanctions [Doc. 577] is granted in part and denied in part as

    articulated above.

2.  Movants did not offer authority showing that Rabo must initiate an adversary

    proceeding to determine whether Debtor is the "owner" of property it listed in

    schedules, operating reports and tax returns before seeking a remedy under

    11 U.S.C. § 1142 to enforce the provisions of a confirmed plan or before

    seeking a writ of execution under Rule 7070 against the machinery and

    equipment it seeks to recover under the terms of the Confirmed Plan.

    Further, Movants did not file an adversary proceeding claiming they owned

    the machinery and equipment at issue.  They waived any right to pursue an

    adversary proceeding by agreeing to the procedure proposed by the Court.[18]

---

[18] During the hearing on June 5, 2019, Kip and Andrea Richards asserted that
third parties are granted a right to object to the sale of assets against which a sheriff or
marshal levies pursuant to a writ of execution.  The Court agreed.  In lieu of waiting for a
law enforcement officer to execute and return a writ, requiring a third party to object to

3. Movants' request that this Court withdraw its writ, enter judgment and require Rabo to transcribe the judgment and seek a remedy before the United States District Court or Nebraska state court is denied.  For the reasons stated on the record, this Court's authority to enter the Writ is provided under Federal Rule of Bankruptcy Procedure 7070.  The Court will enter an Amended Writ reflecting the findings in this Order.

4. Movants' request that the Court withdraw the Writ and order Debtor to pay monetary sanctions is denied.

5.  Movants' request that the Court require Rabo to "state that it will honor and comply with the releases set forth in Section 10.2 of the Plan and its agreement in the Addendum of the Plan that it 'will forgive all remaining debt after the liquidation of all identified assets'" is denied.

---

the levy and execution and holding a hearing on ownership issues at a later date, the Court proposed that Movants be granted an opportunity to claim an ownership interest in certain pieces of machinery and equipment listed in the attachment to the Writ of Execution (Doc. 574).  When asked whether they would agree to the determination of ownership before the writ is executed to save time and expense, counsel for Kip and Andrea responded that they "certainly would."  Counsel also acknowledged that Kip and Andrea Richards simply wanted an opportunity to prove their ownership of certain machinery and equipment. The Court provided Kip and Andrea Richards that opportunity.  By agreeing to this procedure, Kip and Andrea Richards waived their right to an adversary proceeding.  Even if an adversary proceeding was appropriate, the Richards suffered no prejudice.  See In re Siskind, 2008 WL 2705528, at *3–4 (Bankr. D. Md. Jul. 3, 2008) (discussing cases that have concluded that a litigant, even if technically entitled to the procedural protections of an adversary proceeding, may have its rights determined in a contested matter if its rights are determined in non-summary fashion).  Kip and Andrea Richards' rights were preserved, they received adequate notice and they received a full and fair opportunity to be heard at the evidentiary hearing.

6.  To the extent Kip and Andrea Richards possess or control the machinery and

   equipment owned by Debtor and listed in the Amended Writ of Execution and

   attachment issued on September 30, 2019, they shall turn over this property

   to Debtor or Rabo.

Dated:  September 30, 2019.


_____
Shon Hastings, Judge
UNITED STATES BANKRUPTCY COURT